IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NORYS I. GARCIA-ROSADO<br>Plaintiff<br>vs<br>BRISTOL-MYERS SQUIBB PUERTO RICO, INC.<br>RETIREMENT INCOME PLAN<br>Defendant | CIVIL 09-1725CCC |

## OPINION AND ORDER

This action, filed pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1001-1371, is now before us on defendant Bristol-Myers Squibb Puerto Rico, Inc.'s (BMS or the Company) Motion for Judgment on the Record and to Dismiss all Claims (**docket entry 22**) which plaintiff opposed (docket entry 24).

Plaintiff alleges that she filed for her retirement benefits in September, 2007, electing January 1, 2008 for commencement of benefits in the form of a lump-sum rollover to an IRA. ¶¶14-15. The payment, however, did not arrive at that time. Plaintiff further alleges that during a January 24, 2008 telephone conversation a representative of the Pension Center confirmed that she was entitled to the Benefit of 70,[1] and, that the payment would be issued February 8, 2008. (¶18).

The Benefit of 70 is part of Bristol-Myers Squibb Puerto Rico, Inc.'s Severance Plan (docket entry 20, Exhibit 5). Besides basic and supplemental severance pay, Benefit of 70 eligible, involuntarily terminated employees have the opportunity to qualify for early retirement and continued group medical coverage if they meet all the criteria.

The qualification for the Benefit of 70 is more complex than simply adding the employee's age and number of years of employment. As described in the Severance Plan at page 8, the Benefit of 70 works as follows:

---

[1] Also known as the "Rule of 70."

CIVIL 09-1725CCC                              2

> **If you are eligible for severance benefits but not eligible to retire, you may qualify for "Rule of 70" benefits when you are terminated if**:
>
> – you sign and return the General Release during the requisite time period;
>
> – on termination, your age and years of service equals at least 70; and
>
> – you have a minimum of 10 years of service.

(Our emphasis.)  (Footnotes omitted.)

> The Rule of 70 benefits give you the opportunity to extend Medical Plan coverage beyond the end of the Severance Pay Period as long as you are Rule of 70 eligible, have no other group medical coverage available to you and no other group medical coverage becomes available.

Brystol-Myers Squibb Puerto Rico, Inc. Severance Plan and Summary Plan Description, page 8.

In addition to the general release required for the Benefit of 70 early-retirement program, signing the general release was also a requirement for receiving severance pay under the Severance Plan.  The Severance Plan states, in pertinent part, at page 4:

> To be eligible to receive Basic Severance and Supplemental Severance, <u>you must execute and return a General Release</u> during the requisite time period as determined by the Employer and in a form that is satisfactory to the Employer.  After you receive the General Release, you will be given at least 21 days to consider the terms of the General Release.  By law, the General Release cannot become effective until eight days following the date the General Release is signed.  This period is called the "revocation period."  The employee has seven days to revoke the General Release and if the General Release is not revoked, then it is effective on the eighth day.
>
> If you do not return the executed General Release to the Employer at the end of the 21-day period.  The Employer will consider this a refusal to sign it, and you will not be eligible to receive Basic Severance and/or Supplemental Severance.

(Our emphasis.)

The Severance Plan provides at page 8:

> The Rule of 70 Benefits give you the opportunity to receive benefits under the Bristol-Myers Squibb Puerto Rico, Inc. Retirement Income Plan.  If you are Rule of 70 eligible,

CIVIL 09-1725CCC                                             3

>     retirement benefit payments before age 65 are calculated using
>     the same factors as those used for employees who are eligible
>     for early retirement.  The Rule of 70 benefits make it possible for
>     eligible participants to receive benefit payments before age 55
>     with additional reduction factors applied to account for payment
>     over a longer period of time.

In her complaint García-Rosado contends that when she received her retirement payment on February 8, 2008, it was for a total of $155,770.31, much less than she expected (¶20). She avers that, after many attempts to learn the reason for the reduced amount, she was finally notified through an August 1, 2008 letter that she was not entitled to the Benefit of 70 because she had not signed and returned the general release (¶27). Plaintiff's appeal of the denial of the Benefit of 70 was affirmed in a December 11, 2008, letter from Anthony F. Mazzeo, Vice President Global Benefits for BMS, who stated that "the only reason [Plaintiff] did not receive a Rule of 70 pension is [her] refusal to sign and return the General Release.  There is nothing illegal or improper about requiring [an employee] to sign and return the general release as a condition of receiving a Rule of 70 pension" (¶31).

Believing that the requisite of signing a general release waiving her rights under various federal and state statutes is, in fact, illegal,[2] plaintiff seeks an award of $234,407.07, to which she believes she is entitled under the Benefit of 70, plus interest calculated from February 8, 2008 as well as Company's contribution due to her medical plan, and costs and attorney's fees.

Plaintiff's statements at ¶¶35-37 of her complaint, summarizes the grounds for her lawsuit:

>     35. Plaintiff disputes the Pension Plan's decision against
>     her on the grounds of unlawful retaliation in its denial to Plaintiff
>     of the Benefit of 70, an early retirement to which she is entitled,
>     on the basis of her refusal to sign a waiver of her rights to: file
>     a charge with the EEOC, the Secretary of Labor, to Participate
>     in EEOC proceedings, and/or any protected right by any of the
>     Federal Employment Discriminations Laws.  The Retirement

---

[2] Plaintiff has not challenged existence of the waiver requirement; she challenges only the legality of requiring such a general release of her rights.

CIVIL 09-1725CCC                                           4

> Plan incurred in an unlawful practice that interferes with actions that vindicate public interest.
>
> 36. However, since Plaintiff has already exercised those rights referred to in the preceding Paragraph, she would have no objection to signing a lawful separation agreement.
>
> 37. Because Plaintiff respectfully submits that she was discriminated against by the Pension Plan, and understands that she is entitled to the aforementioned benefit of 70 Rule, she requests relief from this Honorable Court as follows.

At this juncture, we must look at prior events in the parties' employment relationship. García-Rosado states that she was involuntary terminated from employment with the Company in January, 2005 and given twenty-one (21) days to sign a "Separation, General Release and Waiver of Claims Agreement" (Separation Agreement). She refused to sign it, and, thereafter, filed a charge of gender discrimination with the EEOC, which led to her filing a related lawsuit before this court. Plaintiff states that her discrimination complaint, filed in this Court on September 15, 2005, was dismissed by summary judgment on October 11, 2007. Complaint, ¶11.[3] Meanwhile, in September, 2007, she filed her application for an early retirement lump-sum pension benefit. Her refusal to sign the general release at the time of her discharge in 2005, which resulted in the denial of the Benefit of 70 as part of her retirement benefits, is the foundation of her action now before us.

**Analysis**

The only ERISA section specifically identified by plaintiff in her complaint as the source of her cause of action is Section 510, 29 U.S.C. §1140 which provides, in pertinent part,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary **for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the**

---

[3]The dismissal was affirmed by the Court of Appeals on July 23, 2008.

CIVIL 09-1725CCC                                       5

> **attainment of any right to which such participant may become entitled under the plan**, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

(Our emphasis.)

The issue comes down to the validity of requiring plaintiff to sign the general release as a condition for receiving the Benefit of 70.[4] In her opposition, plaintiff supports her contention of illegality with a cite to the Age Discrimination in Employment Act, (ADEA) 29 U.S.C. §626(f) regarding the characteristics of a knowing and voluntary waiver; 29 C.F.R. §1625.22(i)(2), which sets out the requirements for waivers under the ADEA. That is, waivers are valid if they comply with the requirements. Plaintiff disagrees that the Benefit of 70 is a privilege rather than a right, but provides nothing to support her statement, other than arguing that "[t]he spirit of the Benefit of 70 is to compensate employees who suffered an involuntary termination for their loyalty to the company," opposition at 3-4, and making repeated characterizations of the waiver as "illegal." In her March 24, 2010 Memorandum (docket entry 21) plaintiff states that "[t]here is no dispute over the terms of the Plan and the dispute concerns the purely legal question of whether waiving statutory rights by signing a general release violates ERISA." Memorandum pp. 11-12.

The Supreme Court, in <u>Lockheed Corporation v. Spink</u>, 517 U.S. 882, 893 (1996), in a challenge under ERISA 's §406, had the opportunity to discuss the matter of an employee having to sign a release of employment-related claims in exchange for receiving early retirement benefits.

> According to Spink and the Court of Appeals, . . . Lockheed's early retirement programs were prohibited

---

[4] Plaintiff makes no reference to "retaliation."

CIVIL 09-1725CCC                                    6

> transactions within the meaning of §406(a)(1)(D)[5] because the required release of employment-related claims by participants created a "significant benefit" for Lockheed.  Spink concedes, however, that among the "incidental" and thus legitimate benefits that a plan sponsor may receive from the operation of a pension plan are attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, increasing employee turnover, and reducing the likelihood of lawsuits by encouraging employees who would otherwise have been laid off to depart voluntarily.
>
> **We do not see how obtaining waivers of employment-related claims can meaningfully be distinguished from these admittedly permissible objectives. Each involves, at bottom, a quid pro quo between the plan sponsor and the participant; that is, the employer promises to pay increased benefits in exchange for the performance of some condition by the employee**. By Spink's admission, the employer can ask the employee to continue to work for the employer, to cross a picket line, or to retire early. **The execution of a release of claims against the employer is functionally no different: like these other conditions it is an act that the employee performs for the employer in return for benefits**.  Certainly, there is no basis in §406(a)(1)(D) for distinguishing a valid from an invalid *quid pro quo*. Section 406(a)(1)(D) simply does not address what an employer can and cannot ask an employee to do in return for benefits. **Furthermore, if an employer can avoid litigation that might result from laying off an employee by enticing him to retire early, as Spink concedes, it stands to reason that the employer can also protect itself from suits arising out of that retirement by asking the employee to release any employment-related claims he may have**.

(Citations omitted.) (Emphasis ours.)

The appellate case law governing the waiver of rights granted under federal employment statutes, focuses largely on whether the waiver was knowing and voluntary. Rights conferred by Title VII, like many other rights created by federal statutory law, may be

---

[5] Section 406(a)(1)(D), 29 U.S.C. §106(a)(1)(D), which addresses prohibited transactions by fiduciaries, provides:  Except as provided in section 1108 of this title: a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transactions constitutes a direct or indirect transfer to, or use by or for the benefit of a party in interest of any assets of the plan.  Section 1108 identifies the exemptions from the prohibited transactions.

CIVIL 09-1725CCC                                7

surrendered through the execution of a release. Cabán v. Phillip Morris USA, Inc., 486 F.3d. 1, 8 (1st Cir. 2007). The protection Congress wished to afford to disabled workers under the Americans with Disabilities Act was found consistent with permitting those workers to resolve their claims by executing a release in exchange for benefits they would not otherwise receive. Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d. 9, 11(1st Cir. 1997). In Rivera-Flores, at 11-12, our Circuit commented that releases in exchange for additional benefits had also been upheld in the employment law context in Title VII and ADEA cases, "as well as under ERISA," citing Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173 (1st Cir. 1995), and Rodríguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st cir. 1993).

The Smart case involved an employee whose severance arrangement did not include the long-term disability plan (LTD Plan) in the list of benefits that she would receive yet contained a general release of all claims, except for worker's compensation claims. The Court stated:

> At any rate, even if we assume that we are dealing with an actual rather than an ersatz waiver, the waiver is permissible. Congress passed ERISA in part to protect the rights of employees who choose to participate in welfare benefit plans. To achieve that end, the statute establishes a private right of action for employees who allege that a plan administrator wrongfully denied a claim for benefits due under the provisions of the plan. But Congress did not go so far as to prohibit an employee from waiving her right to participate in an employee benefit plan.
>
> Of course, despite the fact that employee waivers are not forbidden, ERISA evinces Congress's intent to preserve employee pension and benefit rights. In ERISA cases, therefore, courts should scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights.

(Citations omitted.) See, also, Morais v. Central Bev. Union Employee Retirement, 167 F.3d. 709, 712 (1st Cir. 1999) (federal common law applies to resolve issues of relinquishment of rights and waiver when such side agreements affect the benefits provided

CIVIL 09-1725CCC                                            8

by an ERISA plan); <u>American Airlines, Inc., v. Cardoza-Rodríguez</u>, 133 F.3d. 111, 120 (1st Cir. 1998) (The validity of an ERISA waiver is governed by federal common-law principles.)

The words of caution with regard to the enforceability of particular releases or waivers related to ERISA benefit plans–that they must be made "knowingly" and "voluntarily"--is a non-issue here because plaintiff did <u>not</u> relinquish her rights nor did she sign a form releasing any and all federal and state claims she might have against the company. What is important is that the use of early retirement incentives conditioned upon the release of claims has been expressly approved by other federal statutes and affirmatively sanctioned by federal courts.

In this case, the *quid pro quo* for signing a general release of rights was a severance package that would include the more favorable Benefit of 70 calculation of her retirement payment and health insurance contributions. When discharged in January, 2005, García-Rosado chose not to sign the general release waiving state and federal claims against her employer. Having rejected the general release, she then exercised her rights to file a discrimination charge with the EEOC followed by a law suit in federal court, in which the dismissal judgment was appealed by her to the First Circuit. In so doing, she gave up the opportunity to have the increased retirement benefits that would have resulted from waiving the state and federal claims she might have against Bristol-Myers.

Finding that the use of early retirement incentives conditioned upon the release of claims is not barred by ERISA, we conclude that plaintiff Norys García-Rosado was not entitled to receive the Benefit of 70 calculation of her retirement benefits and the medical insurance contributions since she did not release her employer from employment related claims she might have in exchange for the increased benefits of early retirement she would

CIVIL 09-1725CCC                                     9

not have otherwise received.  Accordingly, the Motion for Judgment on the Record and to Dismiss all Claims (**docket entry 22**) is GRANTED, and plaintiff's action is DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, on November 8, 2010.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge